**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **OROSTREAM LLC,**<br>     **Plaintiff,**<br><br> **v.**<br><br>**ABS-CBN International,**<br>     **Defendant.** | **Civil Action No. 2:15-cv-00248-JRG**<br>**CONSOLIDATED**<br>**(LEAD CASE)**<br><br>**JURY TRIAL DEMANDED** |
| **v. FOX NEWS NETWORK, LLC,**<br>     **Defendant.** | **Civil Action No. 2:15-cv-00251-JRG**<br>(Consolidated) |
| **v. NFL ENTERPRISES LLC,**<br>     **Defendant.** | **Civil Action No. 2:15-cv-00255-JRG**<br>(Consolidated) |
| **v. NHL INTERACTIVE**<br>     **CYBERENTERPRISES, LLC,**<br>     **Defendant.** | **Civil Action No. 2:15-cv-00256-JRG**<br>(Consolidated) |
| **v. POPCORNFLIX.COM LLC,**<br>     **Defendant.** | **Civil Action No. 2:15-cv-00257-JRG**<br>(Consolidated) |
| **v. RLJ ENTERTAINMENT, INC.,**<br>     **Defendant.** | **Civil Action No. 2:15-cv-00258-JRG**<br>(Consolidated) |
| **v. ZUFFA, LLC,**<br>     **Defendant.** | **Civil Action No. 2:15-cv-00262-JRG**<br>(Consolidated) |

**PLAINTIFF OROSTREAM LLC'S COMBINED OPPOSITION TO DEFENDANTS NHL INTERATIVE CYBERENTERPRISES, LLC'S AND ZUFFA, LLC'S CORRECTED MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(6) (DKT. NO. 34)**

**AND**

**OPPOSITION TO DEFENDANTS FOX NEWS NETWORK, LLC, NFL ENTERPRISES LLC, AND POPCORNFLIX.COM LLC, AND RLH ENTERTAINMENT, INC.'S MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(6) (DKT. NO. 42)**

David R. Bennett
**DIRECTION IP LAW**
P.O. Box 14184
Chicago, IL 60614-0184
Telephone: (312) 291-1667
e-mail:  dbennett@directionip.com

**ATTORNEY FOR PLAINTIFF**
**OROSTREAM LLC**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES .......................................................................................iii

TABLE OF EXHIBITS ............................................................................................... v

I.      INTRODUCTION .............................................................................................. 1

II.     BACKGROUND ................................................................................................ 3

        A.      Orostream.................................................................................................3

        B.      The '837 Patent .......................................................................................4

                1.      The '837 Patent States that the Invention Solves Problems in the
                        Art of Computer Network Communications............................................. 4

                2.      The Prosecution History Demonstrates Claim 37 is Directed to
                        Solving a Problem Particular to Computer Technology ............................. 5

                3.      Claim 37 of the '837 Patent is Directed to Bandwidth Utilization
                        for Communications Between Networked Nodes...................................... 6

        C.      Prior Litigation Involving the '837 Patent Required a "Master Node" to be
                "a Point of Connection into a Network," Which Necessarily Ties the
                Limitation to a Computer Implementation ............................................................7

        D.      Defendants' §101 Motions Incorrectly Construe Claim Terms.............................8

                1.      "Target Information Packets" ................................................................... 9

                2.      "Master Node" and "User Node"............................................................... 9

                3.      "Monitoring Length of Time Necessary for Transfer of Each
                        Target Information Packet"....................................................................... 11

                4.      "Adjusting the Rate of Target Information Transfer in Response to
                        the Monitored Transfer Time " ............................................................... 12

III.    STATEMENT OF THE LAW......................................................................... 13

        A.      Motions for Judgment on the Pleadings are Viewed with Disfavor .....................13

        B.      Patent Eligibility under 35 U.S.C. §101 ............................................................15

C.   Computer Software Applications are Patent Eligible Under §101 When They are Directed to Addressing Problems Particular to Computer Technology ..............................................................................................................17

IV.   ARGUMENT ................................................................................................................... 19

A.   Claim 37 does not Recite an Abstract Idea ..........................................................19

B.   Claim 37 has Material, Non-Generic Limitations that Render the Claim Patent-Eligible Under §101 and has a Narrow Scope of Preemption...................21

C.   There is no Evidence to Support that the Limitations are "Well-Understood, Routine, Conventional Activities Previously Known to the Industry" and the Argument is Contrary to the Intrinsic Evidence ......................24

D.   Defendants' Examples are Inapplicable Because They Disregard the Claim Limitations ............................................................................................................25

E.   At a Minimum, Disputed Issues of Fact and Claim Construction Exist that Require Denying the Motion as Premature............................................................26

CONCLUSION........................................................................................................................ 27

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. ___. 134 S.Ct. 2347 (2014) ....................................................... passim

*Ameranth, Inc. v. Genesis Gaming Solutions, Inc.*,
  Case No. 8:11-cv-189, slip op. (C.D. Cal. Nov. 12, 2014) (Ex. J) ................................. 14

*AutoForm Eng'g GmbH v. Eng'g Tech. Assoc., Inc.*,
  2014 WL 4385855 (E.D. Mich. Sept. 5, 2014) ................................................. 14

*Bancorp Services v. Sun Life Assur. Co. of Canada*,
  687 F. 3d 1266 (Fed.Cir. 2012) ......................................................... 14

*Bilski v. Kappos*,
  561 U.S. 593, 130 S.Ct. 3218 (2010) ..................................................... 16, 22

*Bilski, In re*,
  545 F.3d 943 (Fed.Cir. 2008)
  (*aff'd Bilski v. Kappos*, 561 U.S. 593, 130 S.Ct. 3218 (2010)) ......................................... 16

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
  116 F.3d 1364 (11th Cir. 1997) ......................................................... 13

*Campbell v. Wells Fargo Bank*,
  781 F.2d 440 (5th Cir. 1986) ........................................................... 13

*Card Verification Solutions, LLC v. Citigroup Inc.*,
  2014 U.S. Dist. WL 4922524 (N.D. Ill. Sept. 29, 2014) ................................... 14

*Clear with Computers, LLC v. Altec Indus., Inc.*,
  No. 6:14-cv-00889, 2015 WL 993392 (E.D.Tex. March. 30, 2015) ................................ 21

*Data Distribution Techs., LLC v. BRER Affiliates, Inc.*,
  Civil No. 12-4878 (JBS/KMW), slip op. (D.N.J. Aug. 19, 2014) (Ex. M)...................... 14

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  App. No. 2013-1505, slip. op. (Fed.Cir. Dec. 5, 2014) (Ex. H) .............................. passim

*EIT Holdings LLC v. Yelp!, Inc.*,
  Case No. C 10-05623-WHA slip op. (N.D. Ca. Jan. 11, 2020) (Dkt. No. 151)
  (Ex. G).................................................................................... 8, 25

*EIT Holdings LLC v. Yelp!, Inc.*,
  Case No. C 10-05623-WHA slip op. (N.D. Ca. Oct. 24, 2011) (Ex. F) ....................... 7, 10

*Helios Software, LLC v. SpectorSoft Corp.*,
  C.A. No. 12-081-LPS, slip op. at 31-38 (D.Del. Sept. 18, 2014) (Dkt. No. 453)
  (Ex. K).................................................................................... 14

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*,
  677 F.2d 1045 (5th Cir. 1982) ........................................................... 13

*Lowery v. Texas A&M Univ. Sys.,*
    117 F.3d 242 (5th Cir. 1997) ........................................................................ 13

*Loyalty Conversion Sys. Corp. v. American Airlines, Inc., et al.,*
    2014 WL 4364848 (E.D. Tex. Sept. 3, 2014) .............................................. 15

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.,*
    566 U.S. ___, 132 S.Ct. 1289 (2012) ..................................................... 16, 17

*McZeal v. Sprint Nextel Corp.,*
    501 F.3d 1354 (Fed.Cir. 2007) ................................................................... 13

*Netflix, Inc. v. Rovi Corp.,*
    Case No. C 11-6591 PJH, slip op. (N.D.Ca. Dec. 22, 2014) (Ex. I) ............... 15

*Phonometrics, Inc. v. Hospitality Franchise Systems,*
    203 F.3d 790 (Fed.Cir. 2000) ..................................................................... 13

*Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Ltd.,*
    2014 WL 1998053 (E.D. Tex. May 15, 2014) .............................................. 14

*Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Ltd.,*
    Case No. 2:13-cv-894, Dkt. No. 75 (E.D. Tex. July 21, 2014) (Gilstrap, J.) .................. 14

*StoneEagle Servs., Inc. v. Pay-Plus Solutions, Inc.,*
    Case No. 8:13-cv-2240-T-33MAP, Slip Op. (M.D. Fl. Feb. 2, 2015) (Ex. L) ................ 15

*The California Inst. of Tech. v. Hughes Comm., Inc.,*
    2014 U.S. Dist. WL 5661290 (C.D. Cal. Nov. 3, 2014) ................................ 14

*Ultramercial, Inc. v. Hulu, LLC,*
    722 F.3d 1335 (Fed. Cir. 2013) ............................................................ 14, 21

*Wildtangent, Inc. v. Ultramercial, LLC,*
    573 U.S. __, 134 S. Ct. 2870 (2014) ........................................................... 14

**Statutes**

35 U.S.C. §101 ................................................................................... passim

**Rules**

Rule 12(b)(6), Fed.R.Civ.P. ............................................................................ 13

**TABLE OF EXHIBITS**

Exhibit A        United States Patent No. 5,828,837

Exhibit B        Excerpt of initial application claims in the application leading to  United States Patent No. 5,828,837 filed April 15, 1996

Exhibit C        First Office Action dated August 25, 1997 in the application leading to United States Patent No. 5,828,837

Exhibit D        Response to the First Office Action, dated November 13, 1997, in the application leading to United States Patent No. 5,828,837

Exhibit E        Notice of Allowability of United States Patent No. 5,828,837

Exhibit F        *EIT Holdings LLC v. Yelp!, Inc.*, Case No. 10-05623, slip op. (N.D. Ca. Oct. 24, 2011) (Claim Construction Order)

Exhibit G        *EIT Holdings LLC v. Yelp!, Inc.*, Case No. 10-05623, slip op. (N.D. Ca. Jan. 20, 2012) (Order Granting Motion for Summary Judgment on Claims 40 and 41)

Exhibit H        *DDR Holdings, LLC v. Hotels.com, L.P.*, Case No. 2013-1505, slip. op. (Fed.Cir. Dec. 5, 2014)

Exhibit I        *Netflix, Inc. v. Rovi Corp.*, Case No. C 11-6591 PJH, slip op. (N.D.Ca. Dec. 22, 2014)

Exhibit J        *Ameranth, Inc. v. Genesis Gaming Solutions, Inc.*, Case No. 8:11-cv-189, slip op. (C.D. Ca. Nov. 12, 2014) (Dkt. No. 215)

Exhibit K        *Helios Software, LLC v. SpectorSoft Corp.*, C.A. No. 12-081-LPS, slip op. (D.Del. Sept. 18, 2014) (Dkt. No. 453)

Exhibit L        *StoneEagle Services, Inc. v. Pay-Plus Solutions, Inc.*, Case No. 8:13-cv-2240-T-33MAP, Slip Op. (M.D. Fl. Feb. 9, 2015)

Exhibit M        *Data Distribution Techs., LLC v. BRER Affiliates, Inc.*, Civil No. 12-4878 (JBS/KMW), slip op. (D.N.J. Aug. 19, 2014)

Exhibit N        Declaration of Zaydoon Jawadi in Support of Plaintiff's Response to Motions to Dismiss (Dkt. Nos. 34 & 42)

Plaintiff Orostream LLC ("Orostream") hereby files this Combined Opposition to (1) Defendant NHL Interative CyberEnterprises, LLC's ("NHL") and Zuffa, LLC's ("Zuffa") Corrected Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(6) (Dkt. No. 34) and (2) Defendants Fox News Network, LLC ("Fox"), NFL Enterprises LLC ("NFL"), Popcornfix.com LLC ("Popcornflix"), and RLJ Entertainment, Inc.'s ("RLJE") Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) (Dkt. No. 42) (collectively "§101 Motions").

Pursuant to LR CV-7(g), Orostream respectfully requests an oral hearing on this motion.

## I.   INTRODUCTION

NHL's, Zuffa's, Fox's, NFL's, Popcornflix's, and RLJE's (collectively, "Defendants") §101 Motions contend that the case should be dismissed because claim 37 of the U.S. Patent No. 5,828,837 ("the '837 patent" or "patent-in-suit") is ineligible for patent protection under 35 U.S.C. §101 ("§101"). Defendants' two motions argue essentially the same points. First, Defendants contend that claim 37 is directed to the abstract ideas of "monitoring and adjusting how fast something is transferred from one location to another" or "using feedback to adjust a rate of information transfer." (Dkt. No. 34 at 1, 7-8; Dkt. No. 42 at 1, 6-8). Second, Defendants argue that the claim is not a unique solution to a problem specific to computer networks, and instead the limitations are generic and the invention can be performed by humans without computers. (*Id.*). (Dkt. No. 34 at 1, 9-11; Dkt. No. 42 at 1, 8-15). Because of the substantially similar arguments, Orostream files this collective response to both §101 Motions.

The Court should deny the §101 Motions because claim 37 of the '837 patent is not directed to an abstract idea. Contrary to Defendants' assertion, the claim is necessarily rooted in computer technology. The claim does not recite the performance of a pre-computer business practice, nor does the claim recite a mathematical algorithm, an economic practice, a computer performing a non-essential function, or something people can do with pen and paper. Instead,

claim 37 is directed to improving the bandwidth utilization for the transfer of target information packets between nodes in a computer network.  The claim falls within patentable subject matter described by the Federal Circuit as "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, Case No. 2013-1505, slip. op. at 20 (Fed.Cir. Dec. 5, 2014) (Ex. H).  The necessity of tying the claimed improvement to computer networks is supported by the disclosures of the advantages of the invention over the prior art in the '837 patent, the prosecution history distinguishing claim 37 over prior art, and a prior case involving the '837 patent in which the court analyzed the patent in the context of solving computer-based problems.

Defendants' motion is also predicated on its misconstruction of several claim terms that lead to a fundamental error in their analysis.  For example, the claim is not concerned with whether the recipient of the information can consume or absorb the information received (*i.e.*, is an attorney speaking too fast for a court report to transcribe even though the time it takes for each word to travel from the attorney to the court reporter remains the same).  Instead, claim 37 is directed to monitoring the length of time it takes to transmit each target information packet from the master node to the user node to adjust the rate of transmission.   These are fundamentally different issues.   Whether the recipient can process the information is a consumption issue for which the concern is that more information is sent than the recipient can process resulting in lost information.  On the other hand, monitoring the length of time it takes to transmit packets is a bandwidth issue, *i.e.*, making sure that network bandwidth is used efficiently to transmit information to the user.

Defendants oversimplify the invention to improperly negate any analysis of the claim limitations.  Any invention can be oversimplified to the point of abstraction.  For example the

invention of a new cancer treatment drug can be simplistically described as the oral administration of a drug to cure an illness, which have been around for hundreds of years. However, this oversimplification is in contradiction to the Supreme Court's caution to "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. ___, 134 S.Ct. 2347, 2354 (2014).   The Court must look at the actual limitations and determine their scope.   Here, claim 37 requires monitoring the length of time for the transfer of each target information packet in a computer network and adjusting the rate of target information transfer in response to the monitored transfer time.   This is addressing a particular problem related to bandwidth utilization in a computer network.

Even if the Court were to find that Defendants' alleged abstract idea is applicable to the claim, there are material limitations—considered both individually and as an ordered combination—that render the claim patent-eligible under §101.   For example, both the "monitoring" limitation and the "adjusting" limitation are material, non-generic limitations that create a narrow scope of preemption and allow the claim to be designed around.

At a minimum, Defendants' motions are premature in view of the claim construction issues that their motions raise regarding at least the terms "target information," "user node," "monitoring length of time necessary for transfer of each target information packet," and "adjusting the rate of target information transfer in response to the monitored transfer time." The disputed factual and claim construction issues are also supported by the expert Declaration of Zaydoon Jawadi, which is attached at Exhibit N.

## II.    BACKGROUND

### A.    Orostream

Orostream is the assignee of the '837 patent ("the patent-in-suit").   (Case No. 2:14-cv-251 (Dkt. No. 1 at ¶10); Case No. 2:14-cv-262 (Dkt. No. 1 at ¶10)).   Orostream asserts that each

Defendant infringes claim 37 of the '837 patent through particular apps that provide videos to users over a computer network. The accused instrumentalities monitor the length of time necessary to transfer target information packets for the videos and then adjust the rate at which the video information is transferred in response to the monitored transfer time.[1]

## B.      The '837 Patent

The '837 patent is titled "Computer Network System and Method for Efficient Information Transfer." (Ex. A).[2] The application leading to the '837 patent was filed on April 15, 1996, and the patent issued on October 27, 1998. (*Id.*). The '837 patent has 55 claims, consisting of 25 independent claims and 30 dependent claims. The patent explains that the "present invention relates generally to computer networks that connect information providers and end-users of network services." (*Id.* at col. 1:7-9). Generally, the claims of the '837 patent are directed to improvements to communications over a computer network and the claims seek to reduce idle bandwidth while transferring targeted information and minimize the delays of network traffic. (*Id.* at Abstract, col. 2:21-24).

Defendants only challenged the patent eligibility of claim 37.

### 1.      The '837 Patent States that the Invention Solves Problems in the Art of Computer Network Communications

The '837 patent explains that users connect to network services, including the Internet and other online services, to view and download information from various resources. (*Id.* at col. 1:12-16). "When a user selects desired information from such a service, the service transmits the selected information to the user over a network transmission medium in packets." (*Id.* at col. 1:16-19). "The transmission capacity of a network is measured in bandwidth and information

---

[1] Orostream filed 15 law suits asserting infringement of one or more claims of the patent-in-suit. (Case Nos. 2:15-cv-248 to -262 (E.D. Texas)). Eleven cases are currently pending.
[2] Exhibits refer to the exhibits to the attached Declaration of David R. Bennett.

packet are transmitted over available bandwidth…." (*Id.* at col. 1:19-21).  The inventor of the '837 patent recognized that there were many disadvantages with the known systems.

One of the disadvantages of the related art was that the "network service user greatly underutilizes the available bandwidth." (*Id.* at col. 1:28-31).  "For example, no use is made of free space between information packets transmitted over an active transmission medium." (*Id.* at col. 1:28-30).  Another disadvantages is the "one-sided control of information transfer by the user," which can result in the user accessing only a small portion of the available information. (*Id.* at col. 1:34-47).  Another disadvantage of one-sided control is that it "restricts [ ] information providers from offering better services." (*Id.* at col. 1:50-51).  Recognizing these disadvantages of the current systems, the inventor of the '837 patent invented improvements "directed to a computer network that substantially obviates one or more of the problems due to limitations and disadvantages of the related art." (*Id.* at col. 2:21-24).

## 2.   The Prosecution History Demonstrates Claim 37 is Directed to Solving a Problem Particular to Computer Technology

The application leading to the '837 patent was filed on April 15, 1996.  (Ex. A).  The initial application contained 55 claims, and the claim that issued as claim 37 was in the original application as application claim 37.  (Ex. B at 12-13).  Application claim 37 was rejected as anticipated by U.S. Patent No. 4,991,172 ("Cidon Patent").  (Ex. C (Office Action) at 8-9).  The examiner contended that the Cidon Patent disclosed functionality that "effects end-to-end flow control within a communication network, where the flow control is inherently sensitive to changes in the data loaded on the network, changes which are inherently proportional to data propagated on the network." (*Id.* at 9).

In response to the Office Action, the applicant distinguished the limitations of claim 37. Applicant argued that the Cidon patent "merely teaches that an end-point processor 'performs the

5

end-to-end functions of flow control' and that these functions are 'sensitive to the nature of the traffic that is being transmitted.'"  (Ex. D (Resp. to Office Action) at 36 (referring back to pp. 35-36)) (cites omitted).[3]   Applicant further argued that the Cidon Patent also "discusses modifying routing based on 'measurement of link loading' and states that '[a]s the switch is based upon a shared bus, a single monitor that 'observes' the traffic over the bus can derive all information about the status of all its outbound links, including average link loading, packet queue lengths.'"  (Ex. D at 36) (cites omitted).  This is not "monitoring length of time necessary for transfer of each target information packet" between a master node and a user node.   In response to applicant's arguments, the examiner issued a Notice of Allowance for claim 37.  (Ex. E (Notice of Allowance)).

### 3.     Claim 37 of the '837 Patent is Directed to Bandwidth Utilization for Communications Between Networked Nodes

Claim 37 claims a method of transferring target information in packets over a network between a master node and a user node while minimize additional communication delay:

> 37. A method of transferring target information packets while minimizing additional communication delay between a user node and a master node comprising the steps of:
>
> monitoring length of time necessary for transfer of each target information packet; and
>
> adjusting the rate of target information transfer in response to the monitored transfer time.

(Ex. A at col. 18:61-66).  Claim 37 requires a user node and a master node, which are connected to a network to allow communication between the master node and user node over the network. The master node transfers target information packets to a user node.  The "user node" is typically

---

[3] Applicant stated that "claim 37 includes limitations similar to those recited in independent claim 18" and therefore relied on the same argument with respect to claim 37 to explain why claim 37 was also patentably distinct over the Cidon Patent.  (Ex. __ at Resp at 36).

a personal computer. (*e.g.*, Ex. A at col. 3:39-41). The claimed method requires that the "length of time necessary for transfer of each target information packet" is monitored. Then the rate of target information transfer is adjusted in response to the monitored transfer time.

Claim 37 is directed to solving a problem specific to computer technology. The problem solved is related to using underutilized bandwidth. (Zawadi Decl. at ¶¶15, 23). By monitoring length of time necessary for the transfer of each target information packet, the claimed method is able to monitor for network underutilization (target information packets are transferred in a shorter time) or overutilization (target information packets are transferred in a longer time). (*Id.* at ¶22; Ex. A at col. 5:45 – col. 6:30). When there is network underutilization, such that target information packets are transmitted quicker and there is available bandwidth between the master node and the user node, the master node can adjust the rate of transmission to use the available bandwidth to send more target information packets. (Zawadi Decl. at ¶22; Ex. A at col. 5:65-66). When there is network overutilization, such as heavy network traffic that slows the transfer of target information packets, the master node can adjust the rate of transmission to send less target information packets to free up bandwidth. (Zawadi Decl. at ¶22; Ex. A at col. 5:66 – col. 6:1). The '837 patent discloses embodiments and a figure describing the invention in claim 37 as explained in Mr. Zawadi's declaration. (*e.g.,* Ex. A at col. 5:45 – col. 6:30; Fig. 8).

### C. Prior Litigation Involving the '837 Patent Required a "Master Node" to be "a Point of Connection into a Network," Which Necessarily Ties the Limitation to a Computer Implementation

The '837 patent were previously asserted in litigation against several defendants in a consolidated case in the Northern District of California filed in December 2010. *EIT Holdings LLC v. Yelp!, Inc.*, Case No. C 10-05623-WHA slip op. (N.D. Ca. Oct. 24, 2011) (Ex. F). Only claims 40 and 41 of the '837 patent were asserted, which have a few overlapping terms as claim 37, but have significantly different limitations. (*Compare* Ex. A at col. 18:61-67 *with* col. 19:17-

44).  For example, claims 40 and 41 do not have the "monitoring length of time" limitation, "adjusting the rate of target information transfer" limitation, or "packets" required by claim 37. (*Id.*).  And claim 37 does not have the limitations in claims 40 and 41.  (*Id.*).

The court construed five terms, including one term also found in claim 37: "master node."  The court found "master node" to mean, consistent with the intrinsic evidence and the parties' proposals, "a point of connection into a network."  *EIT Holdings LLC v. Yelp!, Inc.*, Case No. C 10-05623-WHA slip op. (N.D. Ca. Jan. 11, 2020) (Dkt. No. 151) (Ex. G).  Based on limitations in the asserted claims the court also found that "master node" is a point of connection "through which items are transmitted and received, to facilitate communication between an information provider and a user node."[4]  (*Id.*).

Although the prior case did not involve claim 37 or any of its limitations, the summary judgment analysis of the terms "master node" and "user node" further demonstrate that the invention in claim 37 is not directed to an abstract idea and is tied to the computer world.  For example, the Court found that a "proxy server's network communication function was equivalent to the master node."  *EIT Holdings*, slip op at 5 (Ex. G).  The Court also found that the user node was the user's computer.  (*Id.*).

### D.   Defendants' §101 Motions Incorrectly Construe Claim Terms

Defendants' motion relies on an improper construction of limitations in claim 37, including "target information packets," "user node," "master node," "monitoring length of time necessary for transfer of each target information packet," and "adjusting the rate of target information transfer in response to the monitored transfer time."  These terms require construction in the context of computer networks.

---

[4] Orostream agrees in part with the prior case's construction of "master node;" however, the construction was in part based on language in claims 40 and 41 that is not applicable to claim 37.

1.      **"Target Information Packets"**

Defendants incorrectly contend that the "Target Information Packets" can be spoken words, pressing on an accelerator pedal, flowing water, food consumption, or exercise.  (Dkt. No. 34 at 1; Dkt. No. 42 at 1).  This is inconsistent with the term "packets" in the context of the patent and as ordinarily understood in the art of computer networks.

In claim 37, the "master node" and "user node" must be capable of transferring and/or receiving "packets."  "Packets" is a term of art in the computer industry and the specification explains that "packets" refers to a unit of data transmitted over a computer network.   (Zawadi Decl. at ¶17; Ex. A at col. 1:16-19).  For example:

- "the service transmits the selected information to the user over a network transmission medium in packets." (Ex. A at col. 1:16-19; *also* 1:28-30, 5:1-3);

- "The transmission capacity of a network is measured in bandwidth and information packets are transmitted over available bandwidth using TCP/IP…." (*Id.* at col. 1:19-22);

- "First, non-target information packet is input to network traffic monitor 600 (step 702). Each bit of shift register 610 is then compared to a parallel bit of detector 630 (step 704) to detect an identification bit pattern, i.e. header or a trailer, of non-target information packets (step 706)." (*Id.* at col. 5:21-25).

- "Additionally, the process may also be modified to adjust the size of the send-window (number of bytes/packets sent before receiving acknowledgment) dynamically." (*Id.* at col. 6:22-24).

Because "packet" is necessarily tied to computer networks, Defendants' contention that "packet" can be a spoken word is inconsistent with the claim 37 and the intrinsic evidence.  In addition, it is unclear what is the target information being transferred in the examples involving pressing on an accelerator pedal, flowing water, food consumption, or exercise.

2.      **"Master Node" and "User Node"**

Defendants incorrectly contend that the "master node" can be a person speaking and the "user node" can be a person listening to the speaker.  (Dkt. No. 34 at 1). Defendants also set up

examples with at best one node (a driver pushing on an accelerator, a person showering, a person gaining or losing weight).  (Dkt. No. 42 at 1). This is inconsistent with the claim language and intrinsic evidence, which require both a "master node" and "user node" that are networked computer technology.

In claim 37, the "master node" and "user node" must be capable of transferring and/or receiving "packets."  As explained above, "packets" are necessarily tied to computer networks. To be capable of transferring or receiving such "packets," the "master node" and "user node" must be computer technology connected to a network.

The specification supports that the "master node" and "user node" are computer technology.  For example, the specification explains that a "master node" is "preferably a server which has a special FTP (File Transfer Protocol) service 132 that transfers information to the user in conjunction with the Client 122." (Ex. A at col. 3:41-44).   The specification also explains that a "user node" is "typically a personal computer, and Client 122 is a program resident on user node 120 to control network information transfer."  (*Id.* at col. 3:39-41).  In one embodiment,  a "[n]etwork traffic monitor 600 monitors the network traffic on the transmission medium between user node 120 and master node 130."  (*Id.* at col. 5:18-20).

The claim construction in the prior litigation also supports that the "master node" and "user node" must be computer technology connected to a network.  As explained above, the prior court construed "master node" to mean "a point of connection into a network, through which items are transmitted and received, to facilitate communication between an information provider and a user node."  *EIT Holdings*, slip op. at 10-11 (Ex. F).

Additional examples from Defendants of pressure placed on an accelerator pedal, adjusting water control values to adjust water temperature, or adjusting diets and exercise also

demonstrate a fundamental dispute over the meaning of "master node" and "user node."  (Dkt. No. 42 at 1).  These examples involve a single person and therefore cannot have two nodes. Defendants' do not even attempt to analogize any part of these examples to a "master node" or "user node."  Without a master node or user node there is also no information transfer between nodes or a computer network over which the information is transferred.

Defendants are therefore not using "master node" and "user node" consistent with claim 37 and the intrinsic evidence.

### 3. "Monitoring Length of Time Necessary for Transfer of Each Target Information Packet"

Defendants incorrectly construe the "monitoring length of time" limitation to refer to the amount of information that the user node can consume, rather than the "length of time necessary for transfer of each target information packet."  (Dkt. No. 34 at 1).  For example, Defendants contend that "Roman orators practicing a speech would adjust how fast they were speaking if they (or someone listening) realized they were speaking too quickly or too slowly."  (Dkt. No. 34 at 1).  This is an example of whether the listener can consume the information it receives. (Zawadi Decl. at ¶¶18-19).  The other communication examples similarly address consumption rather than bandwidth utilization.  (*Id.*).  The claim limitation does not address whether a user receiving information can understand the information received.  In fact, during the prosecution history, the applicant distinguished the Cidon Patent over claim 37, because the Cidon Patent involved "flow control" (whether a receiver can handle information received).  (Ex. D at 36). Defendants' other examples only identify basic feedback mechanisms (a driver pushing on an accelerator, a person showering, a person gaining or losing weight) that are unrelated to transfer time between nodes connected to a network. (Dkt. No. 42 at 1).

Claim 37 is instead concerned with the "length of time necessary for transfer of each

target information packet," *e.g.*, how long it takes to get a packet from point A to point B, which is affected by bandwidth issues in the network.  The claim limitation would allow packets to be sent as quickly as possible based on network bandwidth availability without considering user consumption of the packets.  The specification also explains that the "monitoring the length of time" is in the context of the bandwidth of network traffic:

> Master node 130 estimates the level of non-target information traffic by measuring the length of time between transmittal of a target information packet and receipt of acknowledgment from Client 122. If there is little network traffic, an acknowledgment is returned quickly. The higher the level of network  traffic, the longer it takes to receive an acknowledgment. The master node 130 adjusts the amount of target information packets transmitted in accordance with the amount of time it takes to receive Client 122 acknowledgments.

(Ex. A at col. 5:62 - Col. 6:4).

Because Defendants use a construction of the "monitoring length of time" limitation that relates to consumption by the user node or just general perceptions of people (driving faster, feeling hot or cold water, monitoring health) rather than the bandwidth transmission issues, Defendant's proposed construction is inconsistent with the intrinsic evidence and there is a dispute over the meaning of the term.

### 4.  "Adjusting the Rate of Target Information Transfer in Response to the Monitored Transfer Time "

Similar to the "monitoring length of time" limitation, Defendants contend that "adjusting the rate of target information transfer in response to the monitored transfer time" relates to whether the user node can consume (or understand) the packets, rather than adjusting based on the "monitored transfer time."   As explained above, the claim limitation does not address whether the user node can comprehend the packet once received, instead the claim addresses the "transfer time," *e.g.*, how long it takes a packet to get from point A to point B.   The claim

limitation is directed to addressing network bandwidth concerns, not the consumption of the packets by the user node.  Again, the specification provides examples supporting this meaning. (*e.g.*, Ex. A at col. 5:62 - col. 6:4).

Because Defendants use a construction of the "adjusting the rate" limitation that relates to consumption by the user node rather than the bandwidth transmission issues, Defendants' proposed construction is inconsistent with the intrinsic evidence and there is a dispute over the meaning of the term.

## III.    STATEMENT OF THE LAW

### A.    Motions for Judgment on the Pleadings are Viewed with Disfavor

Regional circuit law applies to motions to dismiss for the failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed.Cir. 2007). The standard for deciding a Rule 12(b)(6) motion has been summarized by the Court of Appeals for the Fifth Circuit as follows:

> A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Lowery v. Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997) (citations omitted); *see Phonometrics, Inc. v. Hospitality Franchise Systems*, 203 F.3d 790, 793-794 (Fed.Cir. 2000) ("the dismissal standard is extraordinary, and one not to be taken lightly"; a motion to dismiss "is viewed with disfavor and rarely granted." (*citing and quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997))).

Although it is technically proper for a court to consider the invalidity of a patent based on

ineligibility at the motion to dismiss stage, it is nevertheless "rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter… because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338-39 (Fed.Cir. 2013) (*vacated on other grounds by sub nom. Wildtangent, Inc. v. Ultramercial, LLC*, 573 U.S. __, 134 S.Ct. 2870 (2014)); *Card Verification Solutions, LLC v. Citigroup Inc.*, 2014 U.S. Dist. WL 4922524 at *2 (N.D. Ill. Sept. 29, 2014).  First, although ineligibility under §101 is a question of law, it is "rife with underlying factual issues."  *Ultramercial*, 722 F.3d at 1338-39; *The California Inst. of Tech. v. Hughes Comm., Inc.*, 2014 U.S. Dist. WL 5661290 at *5 n. 6 (C.D. Cal. Nov. 3, 2014). Second, "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a §101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."  *Bancorp Services v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1273-74 (Fed.Cir. 2012).  A dismissal under §101 is therefore only appropriate "when the only plausible reading of the patent is that there is clear and convincing evidence of ineligibility." *Calif. Inst. of Tech.*, 2014 U.S. Dist. WL 5661290 at *5 n. 6  (*citing Ultramercial*, 722 F.3d at 1339); *also Data Distrib. Techs., LLC v. BRER Affiliates, Inc.*, Civ. No. 12-4878, slip op. at 16-17 (D.N.J. Aug. 19, 2014) (Ex. M); *Rockstar Consort. US LP, Inc. v. Samsung Elects. Co., Ltd.*, 2014 WL 1998053 at *3 (E.D. Tex. May 15, 2014).

Courts have therefore ruled on ineligibility under §101 after claim construction and on summary judgment thereby allowing factual issues to be developed and claim terms to be construed prior to issuing a decision.  *E.g.*, *Ameranth, Inc. v. Genesis Gaming Solutions, Inc.*, Case No. 8:11-cv-189, slip op. (C.D. Cal. Nov. 12, 2014) (Dkt. No. 215) (Ex. J) (denied summary judgment of invalidity under §101); *Calif. Inst. of Tech.*, 2014 U.S. Dist. WL 5661290

at n. 6 (same); *Helios Software, LLC v. SpectorSoft Corp.*, C.A. No. 12-081-LPS, slip op. at 31-38 (D.Del. Sept. 18, 2014) (Dkt. No. 453) (Ex. K) (same); *AutoForm Eng'g GmbH v. Eng'g Tech. Assoc., Inc.*, 2014 WL 4385855 (E.D. Mich. Sept. 5, 2014) (same); *Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014) (granted summary judgment of invalidity under §101 only after discovery and claim construction); *Data Distrib. Techs.*, slip op. at 16-23 (Ex. M) (declining Rule 12(b)(6) motion of invalidity under §101 as premature due to lack of a claim construction); *DDR Holdings*, slip op. at 9-10 (Ex. H); *Netflix, Inc. v. Rovi Corp.*, Case No. C 11-6591 PJH, slip op. (N.D.Ca. Dec. 22, 2014) (Ex. I). (holding that a §101 motion would only be heard after claim construction); *StoneEagle Services, Inc. v. Pay-Plus Solutions, Inc.*, Case No. 8:13-cv-2240-T-33MAP, Slip Op. (M.D. Fl. Feb. 9, 2015) (Ex. L) (denying §101 motion as premature pending claim construction).

### B.   Patent Eligibility under 35 U.S.C. §101

Section 101 defines patent eligible subject matters as follows:

> "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

35 U.S.C. §101.  There are only three exceptions that are excluded from patent eligible subject matter under §101:  Laws of nature, natural phenomena, and abstract ideas.  *Alice*, 134 S.Ct. at 2354.  The basis for these exceptions is that patenting basic tools of scientific and technological work, which the Supreme Court referred to as the building blocks of ingenuity, would tend to impede innovation rather than to promote it.  *Id.*  However, all inventions in effect embody, use, or apply laws of nature, natural phenomena, or abstract ideas so an invention is not patent-ineligible merely because it involves an abstract concept.  *Id.*  Although patenting a building block of ingenuity would risk disproportionately tying up the use of the underlying ideas,

integrating the building blocks into something more "pose[s] no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.* at 2354-55.

In this case, Defendants do not dispute that the claim at issue is covered by the literal language of §101. The analysis therefore proceeds to a two-step process to determine whether the claims at issue are patent-ineligible concepts. *Id.* at 2355.

The first step "determine[s] whether the claim[ ] at issue [is] directed to one of those patent-ineligible concepts." *Alice Corp.*, 134 S.Ct. at 2355. Defendants contend that the claim at issue is directed to only one patent ineligible concept: an abstract idea. (Dkt. No. 34 at 1, 9-10; Dkt. No. 42 at 1, 6-8). If the Court finds that the patent is not directed to a patent ineligible concept, *i.e.*, the patented invention is not an abstract idea, then the analysis ends there and the motion to dismiss under §101 must be denied. If, however, the Court finds that the patented invention is directed to a patent ineligible concept, then the Court turns to the second step and "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice Corp.*, 134 S.Ct. at 2357 (*citing Mayo Collaborative Serv. v. Prometheus Labs., Inc.*, 566 U.S. ___, 132 S.Ct. 1289, 1294, 1298 (2012). Under the second step, even if an invention recites an abstract idea, the invention is patentable if it has additional features to ensure that the claim is more than drafted to monopolize an abstract idea. *Id.* When considering the inventive concept of claim limitations, the limitations are considered both individually and as an ordered combination. *Id.* at 2355.

One non-exclusive test for analyzing patentability under §101 for method claim is the "machine-or-transformation test." *Bilski v. Kappos*, 561 U.S. 593, 130 S.Ct. 3218, 3227 (2010) . A method is patentable under this test if "(1) it is tied to a particular machine or apparatus, or (2)

it transforms a particular article into a different state or thing." *Id.* at 3226-27 (*citing In re Bilski*, 545 F.3d 943, 954 (Fed.Cir. 2008))

### C.      Computer Software Applications are Patent Eligible Under §101 When They are Directed to Addressing Problems Particular to Computer Technology

In *DDR Holdings*, the Federal Circuit addressed whether claims directed to "systems and methods of generating a composite web page that combines certain visual elements of a 'host' website with content of a third-party merchant" were patentable. *Id.,* slip op. at 3 (Ex. H).  After analyzing relevant precedent, the Court began the two-step analysis by finding that the asserted claims did not recite a mathematical algorithm, or a fundamental economic or longstanding business practice. *Id.*, slip op. at 19 (Ex. H).   Furthermore, the Court found that "[a]lthough the claims address a business challenge (retaining website visitors), it is a challenge particular to the Internet." *Id.* (Ex. H).

The Court held that the claims stood apart from prior cases because the claims were addressing a problem particular to computer technology:

> But these claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

*Id.*, slip op. at 20 (Ex. H).  Inventions are therefore patentable under §101 if the claims do not attempt to preempt every application of an idea and instead recite a specific way of solving a computer-based problem. *Id.*, slip op. at 23    The Federal Circuit then held that the claims directed to the software implemented invention were patentable under §101. *Id.*, slip op. at 24.

Defendants rely on two Supreme Court cases to support their argument, but those cases are distinguishable.  In *Mayo*, doctors were told about "relevant natural laws" and then trusted to use the natural laws when appropriate to treat a patient.  *Mayo*, 132 S. Ct. at 1297.  In Claim 37,

however, "monitoring length of time necessary for transfer of each target information packet" is not a "natural law," so the claim is not applying a "natural law" like in *Mayo*.   (*See* Zawadi Decl. at ¶¶15-17).   Furthermore, the rate of target information transfer is adjusted in response to the monitored transfer time.  (Ex. A at col. 18:66-67).   Unlike in *Mayo*, the information provided ("length of time necessary for transfer of each target information packet") is specifically relevant to the action to be taken, adjusting the rate of transfer.  (Zawadi Decl. at ¶22).   The "monitoring" and "adjusting" limitations are therefore not instructions to apply a natural law.

*Parker v. Flook*, 437 U.S. 584 (1978), is also not relevant.  *Parker* had nothing to do with a feedback mechanism, as Defendants incorrectly contend, nor does the term "feedback" occur anywhere in the opinion.  (*See* Dkt. No.42 at 2).   The claim at issue in *Parker* has three steps: "an initial step which merely measures the present value of the process variable (e.g., the temperature); an intermediate step which uses an algorithm to calculate an updated alarm-limit value; and a final step in which the actual alarm limit is adjusted to the updated value."  437 U.S. at 585 (footnote omitted).   The Court stated that the only difference between "the conventional methods of changing alarm limits and that described in respondent's application rests in the second step—the mathematical algorithm or formula."  *Id.* at 585-586.   In this case, neither the "monitoring" limitation nor the "adjusting" limitation are mathematical formulas, and both of those limitations differentiate the invention over the prior art.  (*e.g.*, Ex. A at Col. 1:23-56; Ex. D at 36).   The "monitoring the length of time" and "adjusting" limitations are therefore not insignificant post-solution activity because those are limitations that distinguish the invention from the prior art.  Furthermore, the patent in *Parker* failed to disclose how to select any of the variables that went into the mathematical formula or how the formula related to the chemical process it was designed for.  *Id.* at 587.   In this case, the '837 patent explains how the invention

relates to bandwidth utilization and how the length of time for transmitting packets can be used to adjust packet transmission rate.  (*e.g.*, Ex. A at Col. 5:48-51; Col. 5:62 - Col. 6:4; Jawadi Decl. at ¶23).

## IV.    ARGUMENT

Defendants' §101 Motions should be denied because, when the facts are liberally construed in favor of Orostream, Defendants do not satisfy their high burden of proving invalidity by clear and convincing evidence.

First, claim 37 of the '837 patent is not directed to an abstract idea because the claimed method solves problems specifically found in the realm of computer networks.  Second, even if the Court were to find that Defendants' alleged "abstract idea" was applicable, claim 37 of the '837 patent has additional features to ensure that the claim is more than drafted to monopolize an abstract idea.  Finally, there are claim construction disputes that require denying §101 Motions as premature.  In sum, the §101 Motions fail to satisfy the high burden of proving that there is only one plausible reading of the claim at issue that results in clear and convincing evidence of ineligibility.

### A.    Claim 37 does not Recite an Abstract Idea

The first step in a §101 analysis is to "determine whether the claims at issue are directed to one of [the] patent-ineligible concepts." *Alice Corp.*, 134 S.Ct. at 2355.  Defendants contend that the claim is directed to the patent-ineligible concept of an abstract idea.  However, the claim does not recite a mathematical algorithm, an economic practice, a pre-computer business practice, or a computer performing a non-essential function.  Instead, the claim is rooted in computer network technology that necessarily require a computer network, which is patent-eligible subject matter.

Specifically, Defendants contend that claim 37 is directed to the patent-ineligible concept

of an abstract idea of "monitoring and adjusting how fast something (e.g., information) is transferred from one place to another" or "using feedback to adjust a rate of information transfer."  (Dkt. No. 34 at 1; Dkt. No. 42 at 1).  This disregards the actual limitations in the claim.  Allowing such an extreme oversimplification of the claim would result in no valid patents because all inventions can be simplified to an abstract idea. As the Supreme Court cautioned:

> [W]e tread carefully in construing this exclusionary principle lest it swallow all of patent law. *** At some level, "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *** Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept.

*Alice*, 134 S.Ct. at 2354 (citations omitted).

The '837 patent describes problems specifically found in the realm of computer technology that are solved by the claimed method.  (Jawadi Decl. at ¶¶15-17, 22-23; *e.g.*, Ex A at col. 1:28 – col. 2:11 (discussing shortfalls and problems with underutilizing bandwidth in network communications)).  The problems are solved through the claimed method of monitoring the time necessary for transfer of each target information packet and adjusting the transfer rate of target information in response to the monitored transfer time.  (*e.g.*, Jawadi Decl. at ¶¶15, 23-24).

Computers and computer networks are not ancillary or incidental additions to an abstract idea but are germane and integral parts of the invention disclosed by claim 37.  (Jawadi Decl. at ¶¶16-17).  Claim 37 is directed to addressing bandwidth utilization issues between a master node and a user node connected to a computer network for communication purposes.  (Ex. A at col. 18:61-63).  Bandwidth utilization is a modern problem tied to computer networks.  (Jawadi Decl. at ¶21).  The method requires transferring packets of target information.  (Ex. A at col. 18:61).  Packets are a term of art in the computer industry and refer to data transmission in a network in which a message is broken into a number of parts that are sent independently and reassembled at

the destination.  (*Id.* at col. 1:17-19; Jawadi Decl. at ¶17)  The method also requires monitoring the length of time necessary for the transfer of each target information packet.  (Ex. A at col. 18:64-65).  This monitoring is necessarily performed by computers, particularly when it is packets that are being monitored.  (Jawadi Decl. at ¶20).  Lastly, claim 37 also requires that the rate of the target information transfer is adjusted in response to the monitored transfer time.  (*Id.* at col. 18:66-67).

These limitations demonstrate that claim 37 is solving a problem specific to computer network communications, which distinguish this case from *Ultramercial Inc., v, Hulu, LLC*, 772 F.3d 709 (Fed.Cir. 2014), *Clear with Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-00889, 2015 WL 993392 (E.D.Tex. March. 30, 2015).  *Ultramercial* and *Clear with Computers* both involved claims that could be performed without computers.  On the other hand, claim 37 is monitoring communications between nodes, and monitoring packets and their transfer time, which necessarily requires a computer and does not exist outside of computers.  (Zawadi Decl. at ¶¶15, 16, 20).  This also supports that the claim satisfies the machine-or-transformation test because the claim is tied to networked nodes and improves bandwidth utilization of the computer network.

The claim is therefore patent eligible subject matter under §101 because it does not recite any of the usual patent ineligible subject matter and instead is "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."  *See DDR Holdings*, Case No. 2013-1505, slip. op. at 20 (Ex. H).

### B.    Claim 37 has Material, Non-Generic Limitations that Render the Claim Patent-Eligible Under §101 and has a Narrow Scope of Preemption

Claim 37 is also patent-eligible under the second step of the §101 analysis.  The second step of a §101 analysis "examine[s] the elements of the claim to determine whether it contains an

'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice Corp.*, 134 S.Ct. at 2357.  Claim 37 has material, non-generic limitations demonstrating an inventive concept that render the claims eligible under §101 and does not preempt every application of the abstract idea.  *DDR*, slip op. at 23; (Zawadi Decl. at ¶¶15, 22, 25-27).  Because the material limitations, considered both individually and as an ordered combination, significantly narrow the scope of the claims from the alleged "abstract idea," claim 37 is patent eligible under §101.

The main concern in a §101 analysis is identifying abstract ideas that "would pre-empt use of this [idea] in *all fields*, and would effectively grant a monopoly over an abstract idea." *See Alice Corp.*, 134 S.Ct. at 2354 (*quoting Bilski v. Kappos*, 561 U.S. 593, 611-612, 130 S.Ct. 3218 (2010)) (emphasis added).  Claim 37 is not directed to a fundamental truth; an original cause; or] a motive.  *See Alice Corp.*, 134 S.Ct. at 2355.  The claimed invention requires nodes connected to a network, transmission of packets of target information, monitoring the length of time necessary for the transfer of each target information packet, and adjusting the rate of target information transfer in response to the monitored transfer time, which are all material, non-generic limitations.  (Zawadi Decl. at ¶¶15, 17, 22).  The method is designed to overcome a problem with bandwidth utilization in network communications between nodes, which is necessarily rooted in computer technology to overcome a problem specific to the computer realm.  *DDR Holdings*, slip op. at 20 (Ex. H).  These limitations are specifically directed to computer network communication issues, rather than humans speaking or pre-computer activities.  (Zawadi Decl. at ¶¶15-16, 18-20).  Considering the limitations of claim 37 collectively as an ordered combination therefore supports that the claim is directed to patent-eligible subject matter.

Focusing on individual limitations, one material non-generic limitation in claim 37 that narrows the scope of preemption is "monitoring length of time necessary for transfer of each target information packet."  As explained above, this limitation is directed to addressing a particular problem in the art.  (Jawadi Decl. at ¶¶23-24; Ex. A at col. 5:62 – 6:9).  This is a material, non-generic limitation because packet transfer between a master node and a user node can occur without such monitoring.  (Jawadi Decl. at ¶25).  For example, packet transfers can occur between a master node and a user node without monitoring length of time necessary to transfer target information.  (*Id.*)  Packet transfers can also occur without any monitoring at all, such as when a master node sends packets without any confirmation of receipt from the user node.  (*Id.*).  This limitation therefore has a very narrow scope of preemption that is limited to the field of networked computer communications.  (*Id.*).

Another material non-generic limitation in claim 37 is "adjusting the rate of target information transfer in response to the monitored transfer time."  Again, this limitation is directed to addressing a particular problem in the art.  (Jawadi Decl. at ¶¶23-24; Ex. A at col. 5:62 – 6:9).  This is a material non-generic limitation because packet transfers can occur between a master node and a user node without adjusting the rate of target information transfer in response to the monitored transfer time.  (Jawadi Decl. at ¶26).  For example, the rate of target information can be fixed and therefore there is no adjusting of the rate of target information transfer.  (*Id.*).  Alternatively, networks can be allocated fixed bandwidth depending on packet type, which avoids adjusting the rate of target information transfer.  (*Id.*).  Yet another alternative is that the rate of information transfer does not have to be adjusted in response to the monitored transfer time.  (*Id.*).  For example, the rate of target information transfer can be adjusted based

on counting dropped packets, rather than monitoring the length of time to transfer packets.  (*Id.*).

This limitation therefore has a narrow scope of preemption that can be designed around.  (*Id.*).

In sum, claim 37 addresses the problem of network bandwidth utilization, which is a new problem, not centuries old.  (Jawadi Decl. at ¶¶21, 22).   Moreover, the limitations further narrow the scope of the claim to disclose a specific way of addressing bandwidth utilization issues. (Jawadi Decl. at ¶¶25-27).

### C.    There is no Evidence to Support that the Limitations are "Well-Understood, Routine, Conventional Activities Previously Known to the Industry" and the Argument is Contrary to the Intrinsic Evidence

Defendants' contention that the limitations are "well-understood, routine, conventional activit[y] previously known to the industry" is unsupported by any evidence and contrary to the intrinsic evidence.  (Dkt. No. 42 at 2).  Defendants rely solely on attorney argument without any citation to art.  On the other hand, both the specification of the '837 patent and the prosecution explain how the claim limitations are improvements upon the prior art and are not "well-understood, routine, conventional activit[y] previously known to the industry."  (Ex. A at col. 5:62 – col. 2:16; Ex. D at 35-36).   With no evidence to support their attorney argument, Defendants cannot possibly withstand the motion to dismiss standard that requires drawing all reasonable inferences in favor of Orostream.

Defendants' argument that certain claim limitations are found in the prior art makes the terms "well-understood, routine, conventional activity" conflates a section 101 analysis with an invalidity analysis 35 U.S.C. §102 (anticipation) or 35 U.S.C. §103 (obviousness).  (Dkt. No. 34 at 10).  An analysis under Sections 102 and 103 determine whether the claim limitations are in the prior art, not whether limitations in the prior art are "well-understood, routine, conventional activity."  Prior art can be not well understood, not routine, and not conventional.  However, Defendants' argument does support that claim 37 satisfies the machine or transformation test.

The prior litigation found particular limitations in particular prior art references, and tying them to particular machines, which supports that the invention is tied to use with a particular computer system. *EIT Holdings*, slip op at 5 (Ex. G).

> ### D. Defendants' Examples are Inapplicable Because They Disregard the Claim Limitations

Defendants' examples alleging broad preemption are not applicable because they misconstrue the claim limitations: the examples discuss monitoring, but not "monitoring length of time." Defendants are confusing transfer length of time, that relates to network bandwidth utilization, with the rate of information consumption. (Zawadi Decl. at ¶¶18-19). Information consumption rate is concerned with the pace at which the data recipient (destination) can consume or absorb the data, whereas length of time for transfer is concerned with the utilization efficiency of the transmission medium whereby the transmission medium is shared by multiple computers. (*Id.* at ¶18).

None of the examples provided by Defendants are directed to "monitoring length of time necessary for transfer of each target information packet." The examples are only concerned with rate of consumption, not length of time for transfer of a target information packet. (Zawadi Decl. at ¶19). For example, whether someone is speaking too fast for the listener to comprehend (*e.g.*, too fast for a court reporter to transcribe) has to do with consumption. (Zawadi Decl. at ¶19). This is not a limitation in the claim. "Monitoring length of time necessary for transfer of each target information packet" relates to how long it take for packets to get from one place to another place. Defendants' examples do not discuss the length of time, only consumption. (*Id.*).

Furthermore, none of Defendants' examples demonstrate "adjusting the rate of target information transfer in response to the monitored transfer time." Instead of adjusting in response to the monitored transfer time, Defendants' examples are adjusting the rate of transfer based on

whether the listener can consumer or absorb the data.  (*Id.*).  Adjusting in response to receiver consumption is different from adjusting in response to monitored transfer time.  (*Id.*).  Defendants' do not explain how any speaker adjusts the rate of speech in response to a "monitored transfer ***time***."  Regardless of whether a speaker speaks fast or slow, the time for each word to reach the listener does not change.  Speaking faster does not make a word travel faster.

Defendants' contention that the monitoring step and adjusting step could be performed by humans makes no sense.  The packets monitored in the claim are network transmissions transferred at rates of up to hundreds of thousands of packets per second.  (Zawadi Decl. at ¶20).  A person could not respond to the monitored transfer time to adjust the rate of transmission.  (*Id.*).  Because the packets are computer transmissions, the length of time for transfer must be measured by a computer.  (*Id.*).  The transfer times are constantly changing every fraction of a second, and a person could not react fast enough to adjust the rate in response to the monitored transfer times.  (*Id.*).  The length of time to transfer the packets at which the packets are transferred and the timing during which adjustments must be made require a computer and cannot be performed by a human.  (*Id.*).  The example of a person reviewing information about transfer times and then manually turning a knob or pressing a button to increase or decrease the rate of information transfer is not possible.  (*Id.*).  It requires computer interaction to provide the monitored information, and a person could not keep up with adjusting the rate of target information transfer in response to the monitored transfer time.  (*Id.*).

### E. At a Minimum, Disputed Issues of Fact and Claim Construction Exist that Require Denying the Motion as Premature

Regardless of whether the evidence demonstrates that the claims are patentable under §101, at a minimum, Defendants have not satisfied their burden to show the absence of material

issues of fact or claim construction issues.  As demonstrated above, Defendants have failed to show by clear and convincing evidence that there is only one plausible reading of claim 37 of the patent-in-suit that would invalidate on the grounds of subject matter ineligibility.  When the facts are liberally construed in favor of the plaintiff, Orostream has raised many factual issues, including the facts supported by the Declaration of Mr. Jawadi (Ex. N), regarding whether claim 37 is directed to an abstract idea, the extent of the preemption of claim 37, and the available alternatives to the claimed invention.  (*Supra* §§IV(A)-(D)).

Even if the Court were swayed by some of Defendants' arguments, there are numerous claim construction disputes that make consideration of the §101 Motion premature at this time. For example, there is a dispute over the construction of the terms "target information," "master node," "user node," "monitoring length of time necessary for transfer of each target information packet," and "adjusting the rate of target information transfer in response to the monitored transfer time."  (*Supra* § II(D)).  In effect, the meaning of every material claim limitation in claim 37 is disputed.

## CONCLUSION

For the foregoing reasons, Orostream respectfully requests that the Court deny Defendant NHL Interative CyberEnterprises, LLC's and Zuffa, LLC's Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(6) (Dkt. No. 34) and deny Defendants Fox News Network, LLC, NFL Enterprises LLC, Popcornfix.com LLC, and RLJ Entertainment, Inc.'s Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) (Dkt. No. 42).

Dated:  June 16, 2015                          Respectfully submitted,

                                                        */s/ David R. Bennett*
                                               By:   David R. Bennett
                                                     **DIRECTION IP LAW**

P.O. Box 14184
Chicago, IL 60614-0184
Telephone: (312) 291-1667
e-mail:  dbennett@directionip.com
**ATTORNEY FOR PLAINTIFF**
**OROSTREAM LLC**


### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 16, 2015, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5.

*/s/David R. Bennett*
David R. Bennett